IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KELLIE CRESTMAN DUNCAN,
Plaintiff,

v().

ANTHEM LIFE INSURANCE COMPANY,
Defendant.

Case No. 20–CV–00767–JPG

**MEMORANDUM & ORDER**

This case involves the denial of benefits by a plan governed by the Employee Retirement Income Security Act ("ERISA"). Before the Court is Plaintiff Kellie Crestman Duncan's Motion for Discovery. (ECF No. 15). Defendant Anthem Life Insurance Company ("Anthem") responded, (ECF No. 19); and Duncan replied, (ECF 20). For the reasons below, the Court **GRANTS** Duncan's Motion and **ORDERS** the litigants to engage in limited discovery consistent with this Memorandum & Order.

I. **PROCEDURAL & FACTUAL HISTORY**

According to the Complaint, Duncan "is a vested participant in a Group Insurance Policy for certain employees of Firstsource Group USA, Inc., which provides an employee benefit plan within the meaning of [ERISA]." (Compl. at 2, ECF No. 1). The plan includes long-term disability benefits, and Anthem both administers and pays out those benefits. (*Id.*).

In 2018, Duncan applied for long-term disability benefits under the plan. (*Id.*). Anthem denied her application, and Duncan appealed. (*Id.*). Duncan presented "reports of her restrictions and limitations as well as medical records showing that the condition was permanent and progressive, and that she could not perform the duties of her own occupation." (*Id.*). Her application was also supported by "the clinical determination of her treating physician that

[Duncan] was disabled and entitled to receive long-term disability benefits . . . ." (*Id.*). Anthem still denied her appeal. (*Id.*).

In 2020, Duncan sued Anthem here alleging that denial of her application "was arbitrary and capricious, and not based on substantial evidence, was a breach of their fiduciary duties and **was the product of a conflict of interest and serious procedural irregularities**." (*Id.* at 3) (emphasis added).

Now, Duncan asks the Court to permit limited discovery tailored to the alleged conflict of interest and procedural irregularities. (Duncan's Mot. at 1). More specifically, Duncan contends that Anthem, in denying Duncan's application, relied on "the opinion of board-certified rheumatologist Dr. N. Nicole Barry who performed a review of Ms. Duncan's medical records." (*Id.* at 2). Duncan "submitted extensive medical records from her treating physician indicating that her diagnosis of Rheumatoid arthritis and fibromyalgia created physical restrictions and limitations that prevented her from performing the material duties of her employment." (*Id.* at 1–2). Dr. Barry, however, disagreed:

> Fibromyalgia is a pain syndrome, characterized by hyperalgesia to painful stimuli. It is not progressive nor is it associated with a pathological process.
>
> Fibromyalgia is optimally managed by encouraging exercise and activity, not be limiting it, and does not support the need for functional limitations. Therefore, functional limitations are not supported.

(*Id.* at 2). In brief, Duncan argues that "Dr. Barry's opinion to the disabling effects of fibromyalgia is directly contradicted by the American College of Rheumatology, which has instead described fibromyalgia as a "chronic health condition that causes pain all over the body and other symptoms" and "can affect quality of life." (*Id.* at 2–3). Duncan has also identified at least five other cases when Dr. Barry took the same position in denying benefits. (*Id.* at 3–4). Taken as a whole, Duncan

suggests that "Anthem's choice of Dr. Barry to review [her] medical records . . . guaranteed that [her] claim would be denied," which Duncan says is a conflict of interest. (*Id.* at 4). She therefore seeks the following discovery:

> Plaintiff would like to conduct written discovery regarding Anthem's retention of Dr. Barry. Specifically relating to what guidelines were utilized in the retention of outside experts and production of all information relied upon in making the decision to retain Dr. Barry.
>
> Plaintiff would like to conduct written discovery regarding the number of cases Anthem and its vendor have retained Dr. Barry to examine claims for disability stemming from or relating to fibromyalgia. Specifically relating to the number of times Dr. Barry has opined that Fibromyalgia did not "support the need for functional limitations."
>
> Plaintiff would like to conduct a deposition of Dr. Barry to question her regarding her controversial opinion a diagnosis of fibromyalgia does not "support the need for functional limitations."
>
> Plaintiff would like to conduct written discovery requesting all written opinions that Dr. Barry has produced for an insurance company stating that a diagnosis of fibromyalgia does not "support the need for functional limitations."

(*Id.* at 6).

Anthem, on the other hand, argues that it "did not personally select Dr. Barry to review [Duncan]'s claim." (Anthem's Resp. at 5).

> When retaining an independent physician reviewer, Anthem contracts with Dane Street, an Independent Review Organization. Based on the diagnosis/diagnoses presented by Anthem, Dane Street selects a physician in a given specialty from its contracted network. Thus, Plaintiff's entire basis for discovery fails because Anthem did not personally select Dr. Barry to review Plaintiff's claim and there is nothing to be "explored"

(*Id.*) (internal citations omitted).

## II. LAW & ANALYSIS

"ERISA provides 'a panoply of remedial devices' for participants and beneficiaries of benefits plans." *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 108 (1989) (quoting *Mass. Mut. v. Russell*, 473 U.S. 134, 146 (1985). Relevant here, it "allows a suit to recover benefits due under the plan, to enforce rights under the terms of the plan, and to obtain a declaratory judgment of future entitlement to benefits under the provisions of the plan contract." *Id.* (citing 29 U.S.C. § 1132(a)(1)(B)). That said, if the plan grants "the administrator or fiduciary discretionary authority to determine eligibility for benefits," *id.* at 115, then "[t]rust principles make a deferential standard of review appropriate," *id.* at 111 (citing 1 Restatement (Second) of Trusts § 187 (abuse-of-discretion standard)). This "arbitrary-and-capricious review turns on whether the plan administrator communicated 'specific reasons' for its determination to the claimant, whether the plan administrator afforded the claimant 'an opportunity for full and fair review,' and 'whether there is an absence of reasoning to support the plan administrator's determination.'" *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009) (quoting *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 832–33 (7th Cir. 2009)). In other words, "the administrator's decision will only be overturned if it is 'downright unreasonable.'" *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 380 F.3d 1040, 1045 (7th Cir. 2004) (quoting *Carr v. Gates Health Care Plan*, 195 F.3d 292, 295 (7th Cir. 1999)).

Along those lines, a plan administrator who "both evaluates claims for benefits and pays benefits claims" can present a "conflict of interest" in some cases. *Metro. Life Ins. Co. v. Glenn*, 554 U.S 105, 112 (2008). Even so, it is "not the existence of a conflict of interest—which is a given in almost all ERISA cases—but the *gravity* of the conflict, as inferred from the circumstances, that is critical." *Marrs v. Motorola, Inc.*, 577 F.2d 783, 789 (7th Cir. 2009)

(emphasis in original). "[T]he gravity of the conflict, and thus the likelihood that the conflict influenced the plan administrator's decision, should be inferred from the circumstances of the case, including the reasonableness of the procedures by which the plan administrator decided the claim, any safeguards the plan administrator has erected to minimize the conflict of interest, and the terms of employment of the plan administrator's staff that decides benefits claims." *Majeski*, 590 F.3d at 482 (citing *Marrs v. Motorola, Inc.*, 577 F.2d 783, 789 (7th Cir. 2009)).

To that end, "[a]lthough discovery is normally disfavored in the ERISA context, at times additional discovery is appropriate to ensure that plan administrators have not acted arbitrarily and that conflicts of interest have not contributed to an unjustifiable denial of benefits. In these exceptional cases, where a district court allows limited discovery based upon what appears to be a sustainable allegation, the district court must monitor discovery closely." *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 814–15 (7th Cir. 2006). Put differently, "[w]here a claimant makes specific factual allegations of misconduct or bias in a plan administrator's review procedures, limited discovery is appropriate." *Id.* at 815. The claimant, however, must first "demonstrate two factors": "First a claimant must identify a specific conflict of interest or instance of misconduct. Second, a claimant must make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." *Id.* "[T]his standard essentially precludes discovery without an affidavit or factual allegation," *id.*, so "trial judges must exercise their discretion and limit discovery to those cases in which it appears likely that the plan administrator committed misconduct or acted with bias," *id.* at 815–16.

Anthem contends that no conflict exists because it does not evaluate benefits claims itself. Rather, an "independent review organization"—Dane Street—conducts the evaluations; Anthem simply presents Dane Street with "the diagnosis/diagnoses," and "Dane Street selects a physician

in a given specialty from its contracted network." So because it distanced itself from the process, Anthem argues that it is unlikely that it acted with bias. The Court disagrees.

Limited discovery is appropriate here. Although Anthem did not select Dr. Barry, it selected Dane Street. And if Dane Street consistently recruits a physician with a minority view that results in more claims being denied, then Anthem may have a conflict of interest. Suppose that Anthem receives a disproportionate number of benefits claims relating to fibromyalgia. If Anthem knows that Dane Street is likely to select Dr. Barry, who apparently does not believe that fibromyalgia is *ever* a qualifying condition, then it may be motivated to hire Dane Street so that it can deny more claims and thus benefit its bottom line. To be sure, the Court is not yet weighing in on the merits of this claim. If Duncan's assertion is correct, however, then a conflict may very well exist. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003) ("[P]hysicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employer money and to preserve their own consulting arrangements.") (cleaned up). Through limited discovery, the truth of the matter will surface. And other district courts in the Seventh Circuit have allowed parties "to explore, in at least a limited fashion, whether [a] conflict actually motivated the plan administrator's decision." *See Baxter v. Sun Life Assurance Co. of Can.*, 713 F. Supp. 2d 766, 773 (N.D. Ill. 2010) (noting that "courts in the Southern District of Indiana have almost unanimously concluded that" a strict reading of the *Semien* factors would make discovery "nearly impossible to obtain" and holding the same); *e.g.*, *Hughes v. CUNA Mut. Grp.*, 257 F.R.D. 176, (S.D. Ind. 2009) ("Despite the split among the various courts elsewhere, all three decisions from this District that have considered the issue agree that *Semien*'s two-part test for authorizing conflict discovery no longer remains viable."). Ultimately, "the significance of the factor will depend on the circumstances of the particular case" given the arbitrary-and-capricious

standard. *See Glenn*, 554 U.S. at 108. In sum, the Court will permit Duncan to conduct the limited discovery requested in its Motion.

### III.    CONCLUSION

The Court **GRANTS** Plaintiff Kellie Crestman Duncan's Motion for Discovery and **ORDERS** the litigants to engage in limited discovery consistent with this Memorandum & Order.

**IT IS SO ORDERED.**

**Dated: Friday, April 2, 2021**

**S/J. Phil Gilbert**
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
